United States District Court
District of Connecticut
FILED AT    BRIDGEPORT

August 7    20 15
Roberta D. Tabora, Clerk
By_____
Deputy Clerk

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

In re:

      HERMANN VANECK,        :     Case No:  3:15-cv-00343-SRU
            Debtor          :
_____:     August 4, 2015

Bankruptcy Case No:  15-30014

HERMANN VANECK, Chapter 7 Debtor

---

Appeal from the United States Bankruptcy Court
For the District of Connecticut

---

## APPELLANT'S OPPOSITION BRIEF
## TO NON-PARTY PAPER CORPORATION
## "DLJ MORTGAGE CAPITAL INC"
## MOTION TO DISMISS APPEAL

---

HERMANN VANECK
24 Ebony Ln
Ivoryton, CT 06442

Dated:  August 4, 2015

1

Brought before the Court is a *Motion to Dismiss Appeal* ["the Motion"] claimed being advanced by the entity *DLJ Mortgage Capital, Inc.* [hereinafter" "DLJ"], by and through the foreclosure-mill law firm of *Hunt, Leibert, Jacobson.* As will be described further herein, the Appellant denies that "DLJ" is a bona-fide mortgage corporation[1], and is instead a paper shell, or sham corporation, set up as a special-purpose vehicle or nameplate to advance the interests of certain individuals from Long Island, who actually work for Credit Suisse AG, a Swiss bank.

Before getting into the particulars of the sham nature of "DLJ," the presentation of a *Motion* before this Court first requires, as a gateway test, that the Movant actually have Standing to appear before the Court. As respects that test, "DLJ" is lacking.

## I.     "DLJ" LACKS STANDING

### (a)     Movant is not a secured creditor before the court.

Movant, in its very first sentence of its *Motion for in-rem Relief*, [Doc. 12], declares to the Court that it is "a secured creditor of the above-named Debtor.." The pathway to status as a Secured Creditor is through the <u>*Proof of Claim*</u>. Where the debtor lists the purported creditor as a Secured Creditor, then that is taken as presumptive proof of the creditor's status. Where the Debtor lists the purported creditor as a "disputed creditor," then it is up to the claimant to file a Proof of Claim and set up its claims against the Debtor. Where the debtor does not recognize the purported creditor as a creditor, then again the creditor must file a *Proof of Claim* in conformance with the Court's requirements, including documentation has to the purchase of the Obligation being claimed and how the creditor determined that it was a Secured Creditor.

---

[1] Our Courts do not have a category for purported creditors who elect not to place themselves before the Court. The Appellant herein, Debtor, thus refers to "DLJ" as a *pretend-creditor.*

Herein, "DLJ" has filed _nothing_. There is no Proof of Claim filed, and the Debtor does not recognize nor list "DLJ" as a secured creditor. Accordingly, for the purposes of this Bankruptcy Court, "DLJ," whoever they might be, is emphatically _not_ a Secured Creditor.

**(b)     Without a Proof of Claim, Movant has no right to seek relief.**

Standing refers to a party's right to seek relief. _Farmer v. Kinder_, 89 S.W. 3rd 477, 551 (Mo. Banc 2002).  If a party seeking relief lacks standing, the trial court does not have jurisdiction to grant the requested relief.  _Shannon v. Hines_, 21 S.W.3rd 842 (Mo. App. E.D. 1999).

As a threshold matter, the Movant herein, "DLJ,"[2] has not established any justiciable interest in the matters before the court.  To have an interest, "DLJ" would have to demonstrate a real aggrievement, which would be some act or failure to act on the part of the Debtor that adversely affected the interests of the claimant, as being aggrieved.  There is no such representation here.

Aggrievement, within the context of the bankruptcy courts, can be demonstrated by an (uncontested) _Proof of Claim_.  Absent the filing of the _Proof_, there is no foundation for the administrators of the Debtor's Estate or the Court to determine the nature and substance of the creditor's aggrievement.  Thus there is nothing for the bankruptcy court to do to help the claimant, as he has not put himself forth to the court as a creditor.

**(c)     Without a "Proof," the court is bereft of direction as to the identity of a creditor and the nature of the claim of aggrievement, and has no foundation by which to offer any relief.**

The only persons or entities that would have Standing in the case at bar would be the creditors with a Proof of Claim, the United States Trustee, and the Chapter 7 Trustee of the

---

[2]  Although Appellant is referring to "DLJ" as the "Movant," the Appellant does not accept that "DLJ" is a real, bona-fide corporation.  In contrast, Appellant contends that "DLJ" is a paper or sham corporation.

debtor's bankruptcy estate. The problem confronting the Court is that nobody knows who "DLJ" is. There is nothing in the Record. The debtor does not acknowledge "DLJ," whomever they might be and whatever their provenance might be. "DLJ" flatly refuses to file a *Proof of Claim*. The upshot is that "DLJ" remains some nebulous entity, and no path for offering relief of aggrievement can be found as there is not claim before the Court. Who is "DLJ"? Nobody knows. To no surprise, Hunt-Leibert prefers it that way.

Had "DLJ" filed a proper Proof, then the Court would have some basis upon which to address a claim of aggrievement, and the Debtor would have a starting point from which to file an Objection and so engage the judicial machinery for the orderly administration of his affairs.

Where a purported creditor flatly refuses to properly place itself before the Court and submit his claim to Standing and his claim of aggrievement to proper scrutiny, the Court errs in allowing the purported entity to file Moving papers and to issue an Order based upon same.

## II.   "DLJ's" SUGGESTION THAT THIS APPEAL IS MOOT IS MERITLESS.

In a belated attempt to avoid the Court's focus on the pretend-creditor's failure to file a Proof of Claim, which in turn would have invited the Court to scrutinize and review the identity and legitimacy of "DLJ," Hunt-Leibert sought to argue that the Appeal of the Court's Ruling is "moot" as the Court itself later vacated its own Ruling.

It is well-established law that the Bankruptcy Court loses subject-matter jurisdiction at the moment an Appeal is launched. *F. Rule Bankr. P. 8008.* There is no credible dispute that the Debtor filed his Appeal on February 26, 2015. As of that moment, the Bankruptcy Court lost jurisdiction over the specific subject-matter of the "DLJ" *Motion for relief from automatic stay* [Doc 12].

It becomes apparent that the Court [Manning, J.] became acutely uncomfortable with the behavior of Hunt-Leibert in their presentation of the *stay-relief* Motion,  and, one month after the debtor filed his Appeal, the Court issued a Vacating of its own Order, based on malfeasance of Hunt-Leibert and "DLJ." In particular and without limitation, the Court found that St.-Pierre of Hunt-Leibert had flatly failed to conform to the Court's own specific instructions to Notice the Debtor of their Motion and Hearing by either overnight courier or overnight mails.  Indeed, the *Certification of Service* of St.-Pierre attested to their breaches.  Although counsel St.-Pierre of Hunt-Leibert now represents to this Court, in her *Motion to Dismiss Appeal*, that the "Order having been vacated on the same day this Appeal was filed effectively mooted this Appeal in its entirety" [**M**, III(A)],  that representation is a falsity of St.-Pierre, as the Appeal pre-dated the Court's later efforts to vacate its Order by one month.

Nonetheless, despite the Court's own belated recognition of the misconduct of Movant by counsel Hunt-Leibert, it did not have continuing Jurisdiction to vacate its own Order, the matter having been taken under Appeal. *F. Rule Bankr. P. 8008.*

## III.   "DLJ's" CONTENTION THAT THE DEBTOR LACKS STANDING IS WITHOUT MERIT.

### (a)   The argument proffered describes "the defendants," "lien avoidance," And "the creditor," none of which even exist within the context of this Motion, and thus the argument, being meaningless, must be disregarded.

Movant by counsel St.-Pierre graces this Court with a long discursive that "the Defendants" have a status deficiency.  The discursive appears to be a disjointed rambling as to State Court law and the "Connecticut Practice Book," none of which seems to have any place herein.  First, it is unclear what counsel means by "the Defendants."  There are no "defendants."

It is not a proper function of this Court to attempt to glean, by some act of alchemy, what it is that counsel sought to set forth.  This Court has an Appellant before it, and there is no

5

responsive Appellee that has chosen to appear and make argument.  Movant is not an Appellee; Movant has not placed itself before the Bankruptcy Court by filing a Proof of Claim.  Just who are "*the Defendants*"?  Assuredly, there are no "*the defendants*"  (note the plural construct). Accordingly, this entire discursive, this being Legal Grounds Sec. "B",  is properly disposed of by dismissal of the Argument.

Assuming *arguendo* that the Court is inclined to,  by some sortilege, construct a conjury by devination of the thinking of counsel St.-Pierre, the entirety of the discursive remains a rambling, incoherent argument, liberally laced with *ad hominem* attacks upon the Appellant.  The suggestion that the Debtor [assuming *"the Defendants"* becomes the Debtor] lacks Standing to protect his own interests in Court is farcical.  Certainly, a bankruptcy estate is created upon the filing of a petition, and a Trustee is appointed to protect the interests of the estate.  That said, manifest rights, duties and obligations remain *with the debtor*  in order to protect both the Debtor's interests and that of the estate.  As but one example, it is the Debtor, and not the Estate Trustee, that is responsible for purchasing and maintaining of property and liability insurance upon his real estate – notwithstanding that his equity interests are placed in the hands of the Trustee.  Additionally, and in like vein, it is the Debtor – not the Trustee – that is obliged to purchase and maintain auto liability insurance upon autos that have become property of the Estate.

It is the duty of the Debtor to unilaterally, and without either permission or consultation with the Estate Trustee, undertake these steps to protect both his own interests and that of the Estate.  It becomes apparent that the Debtor has a continuing duty to unilaterally undertake actions to advance his cause, and that of the Estate.

In opposite stance, counsel for "DLJ" proposes to recite state-law cases on the concept of a litigant's Standing before a State Court to buttress the proposal here that "the defendants" have no Standing before the bankruptcy court. Assuming *arguendo* that "the defendants [plural]" is morphed into the Appellant herein (and there is no foundation for such morphing), nonetheless even under that generous reconstruction of what might be in the mind of counsel does not produce the result that the Debtor lacks Standing within a bankruptcy court context. The debtor is and remains the residual owner of both real assets and prospective claims that the Trustee chooses not to liquidate or file suit on, respectively. In this case, the Trustee has abandoned the entirety of the Estate, without exception, over to the Debtor. The trustee has concluded that there is no secured creditor to make distributions to, and thus abandoned the Estate to the Debtor. The determination of the Trustee again flows from the non-existence of any Proof of Claim being advanced by any purported creditor – including, of course, "DLJ."

After getting past the rambling on State-law Standing discussions about being in court to sue, none of which is remotely relevant herein, counsel for "DLJ" goes into a monologue about "pre-petition causes of action and claims," none of which is relevant to these issues, and another monologue about the "trustee avoiding certain liens and transfers of property" - again, none of which is remotely relevant herein. For example, counsel for "DLJ" is heard to argue: "If a lien is avoided, the trustee thereafter 'steps into the shoes' of the creditor…" Well, presumptively "DLJ" would love to image itself as a "creditor" [although it carefully refuses to do so before this Court], in which case by the argument being advanced, it is "DLJ" that would be relieved of any cause of action before this Court.

The arguments presented to this court by counsel for "DLJ" are incoherent and meaningless. Just who are "the Defendants"? What or where is this "lien" being "avoided"?

Indeed, who are "the creditors"?  Certainly not "DLJ," which has failed the elemental test of

filing a *Proof of Claim* to gain the status of creditor.

> **(b)   The case-law recited by Movant does not support Movant's contentions, are
> not on point, and not germane to the issues before this Court standing in
> Appeal.**

>> **(1)   *Channer v. Loan Care Service Center* is inapposite.**

Movant by counsel goes to some length to describe *Channer*, 2011 WL 238878,

where the apparent issue in controversy was a challenge to a "sold" mortgage subsequent to

discharge, describing the mortgage as invalid.  The Court remarked that

>> "Both the residence and the secured claim were listed in the Channer's

>> bankruptcy schedule…"

This is differentiated from the Debtor's petition in that Schedule **D**, the listing of real

property and claims against same, is utterly devoid of any listing of the subject property or any

creditor's claim thereon.  Indeed, extrapolating from the Court's reasoning, even in the event that

the Court were to conclude that "DLJ" was a "creditor" (a status that "DLJ" itself chooses not to

advance), the absence of the creditor's claim on Schedule "D" opens the door to the debtor

advancing litigation claims against that entity.  Nonetheless, "DLJ" by counsel St.-Pierre would

urge this Court to substitute her reasoning for the Court's own: "These comments are certainly

dispositive of any claim…"

Whatever was going on in *Channer*, it is not going on in the case at bar.  There is no

"creditor."  There is no listing of any claim or asset in the bankruptcy schedule. The cause of

action is not before the bankruptcy court – specifically, because "DLJ" has carefully avoided

bringing itself before the harsh glare of inspection of the Bankruptcy Court.

(2)   *In re Howrey, LLP* **is inapposite.**

Counsel St.-Pierre for "DLJ" goes to some length to advance the proposition that "Allowing the Debtor to assert a defense in another forum outside the scope of the bankruptcy proceeding would facilitate his control of what should have been an asset of the bankruptcy estate…"  It is not clear just exactly what point counsel is seeking to make.  The *only* forum before which the Debtor is placing his interests is the bankruptcy court.

The Debtor has placed his affairs into and before the bankruptcy court, in an effort to obtain a forum in which to resolve his matters.  Along comes "DLJ" and files its Motion, baldly claiming it is a "secured creditor."  Who is "DLJ"?  The Debtor does not treat "DLJ" as a secured creditor.  "DLJ" is not on the schedule of real estate secured assets.  Did "DLJ" file a Proof of Claim, in an effort to place its claim before the Court?  It has not.  "DLJ" has carefully avoided placing *any* claim before this Court.  "DLJ" cannot be heard to advance any claim of a secured creditor, as it has not taken steps to place such an assertion on a proper foundation.

Adverse counsel's argument seems to be that the Debtor should not assert rights *"in another forum."*  Counsel references *Howrey* in support of that proposition.  Yet, the Debtor is *not* asserting rights "in another forum."  The Debtor is before this Bankruptcy Court.

(3)   *In re Turner* **[490 B.R. 1 (2013)] is not instructive to this case as Debtor is not attempting to Avoid a deed of trust.**

*Turner*, it is claimed by Movant, stands for the proposition that the debtor has no power to commence an adversary proceeding to avoid a deed of trust.  First, the Debtor is not attempting to avoid a deed of trust, nor a mortgage.  There is no mortgage placed before this Tribunal to scrutinize.

Second, The case-specific facts of *Turner*, 490 B.R. 1 (2013) do not lend to any teaching here. In *Turner*, the lender (Bank of America, no surprise) failed to record its interest and had no documents allowing it to record an interest. Bank of America then sued Turner, seeking an Order to compel Turner to "execute necessary forms to permit the bank to record its deed of trust." *Id*, at 2. Responsively, Turner filed for protection under the bankruptcy code. The issue before the Court was then when the deed of trust was effective. In the highly fact-specific matters of that case, the Court found that D.C. law held a deed of trust to be effective upon execution, not recordation.

The *Turner* case does not teach this Court anything of value. The matter herein does not flow from a District of Columbia transaction; the specific property laws of the District of Columbia do not impact matters before this Court. Further, the case at bar is not about avoidance of a mortgage. There is no discussion of a "Mortgage" in controversy, and the Debtor has no particular need to avoid a mortgage. The mortgage that the Debtor acknowledges is on another property.

Further, "DLJ" has not provided the Court with any foundation to conclude that "DLJ" seeks some form of relief as reflects a "mortgage" claim. DLJ has not filed a *Proof of Claim*, and absent same, the Court has no foundation from which to conclude that a mortgage is in controversy.

Finally, *Turner* specifically recites that "**[a] debtor is entitled to object to a claim under 11 U.S.C. § 502(a) (permitting a party in interest to object to a claim).**"*Id* at 4. This Opinion thus flatly contradicts the entire thread of argument of Movant by Counsel that the debtor is not entitled to do anything. The debtor can object because the debtor is a party in interest, period.

IV.    "DLJ's" CONTENTION THAT THE APPEAL IS FRIVOLOUS IS FARCICAL.

A major part of the Hunt-Leibert playbook is to heap denigration upon debtors.  The idea is that so doing lessens the burdens of demonstrating arguments by merit and instead appeals to emotion.  Herein, counsel St.-Pierre of Hunt-Leibert makes the following claims:

-       "*This matter has been pending since 2002*."  This is a farcical claim since "DLJ" first surfaces within the State Court proceedings in 2013.

-       "*The history clearly shows that the Debtor has used our judicial system as a means to thwart consummation of DLJ's action.*"  To advance this absurd claim, the Movant has inundated this Court with mounds of paper all of which relate to <u>*other parties*</u> that have nothing to do with "DLJ," whoever "DLJ" might really be.  As part of this approach, counsel for Movant includes as Exhibit a copy of a *Motion for Summary Judgment* filed in 2003 in a State Court matter.  Counsel fails to remark that that Motion was <u>Denied</u> [Jones, J.].  Nonetheless, so what?  "DLJ" is not even around.  All of the vast poundage of paper is utterly irrelevant to the matters before the Court.  We first see DLJ show up in 2013, attempting to litigate against a party that does not even have an ownership interest in the property.  Upon obtaining a default decision against a non-owner, DLJ then records a claim on the land records – all without the property owner ever knowing about it. DLJ then pretends to stand before this Court with a feigned posture of child-like innocence,  pointing fingers at another.

-       "*The debtor cannot use this Appeal to undo a prior judgment…*"  The novelty of this claim is that the debtor does not recite any prior judgment, nor is there one on record as respects DLJ that the debtor would seek to "undo."  "DLJ" has no Judgment against this Debtor.  And even if it did, assuming same *arguendo*, the Debtor makes no effort, even mention, of a "prior judgment."  Debtor argues that counsel for "DLJ" has egregiously misrepresented herself and

been untruthful to the Tribunal.  Debtor also maintains that, absent a filed Proof of Claim, whoever "DLJ" might be, they do not stand before the Bankruptcy Court, and have no ability to invoke its jurisdictional or remediational powers.

## V.   MOVANT BY COUNSEL HAS BEEN UNTRUTHFUL TO THIS COURT. WHAT MOVANT CLAIMS TO BE THE "FACTUAL BACKGROUND" IS AN EXERCISE IN SOPHISTRY, FOR WHICH SANCTIONS ARE APPROPRIATE.

Throughout the avalanche of insupportable claims with which Movant by counsel has inundated this Court,  the underlying thematic is that the Debtor has filed "ten bankruptcies" as part of a "13-year attack upon DLJ."  The matter of the preposterous "ten bankruptcies" has been discussed in detail in debtor/Appellant's Brief, and is incorporated herein by reference and not further dissected.  There are no "ten bankruptcies;" that is a fantasy being concocted by Linda St.-Pierre.  It is a claim, continuously repeated, so outrageous that it warrants suspension from practice before the Federal Courts as sanction.  In sum, ***nothing*** that the Debtor has done in any other forum has been with "DLJ" present as an actor.  The previous bankruptcy petition had as proximate cause a landlord breaking into a workshop of the Debtor and spiriting away some $988,000 in tools and equipment, then threatening to sell same at a roadside auction.  The act of entry and detainer, plus the theft by conversion, of the Debtor's valuable property was interrupted by the Debtor filing his Petition when he learned of the break-in and removal – it had ***nothing*** to do with "DLJ," who, the Court is reminded, is ***not*** a creditor of the debtor,  as demonstrated by its refusal to file a Proof of Claim.

Movant by counsel asserts that "[T]he debtor …has engaged in…meritless state court and appellate court litigation which has severely prejudiced DLJ."  This astonishing assertion is egregiously untruthful, as demonstrated simply that ***no litigation*** has been engaged in by the

debtor against DLJ!  Nor is it even possible for the debtor to engage in litigation against "DLJ," as the entity has no corporeal existence, and is a sham entity constructed by former employees of the Donaldson Lufkin Jenrette investment house, now employees of Credit Suisse.  Can "DLJ" even be subject to a Summons and service of process?  That is dubious; "DLJ" has no address, other than of Credit Suisse – and the nameplate of "DLJ" is conspicuous from its absence on the doors of Credit Suisse in New York.

The position of counsel for Movant, when distilled, is that the Courts are here for the convenience of whatever fraudulent little scheme some hustlers in New York dream up. Anything and everything that would stand in the way of default judgments against real estate, to provide a mechanism for taking and unjust enrichment, is inconvenient, and thus (by the descriptive of counsel for DLJ) "severely prejudicial."

It is not the purpose of the Courts to act as a lubricated conveyor-belt for the machinations of New Yorkers hiding behind a paper sham corporation frontispiece, the ephemeral entity that has no tangible existence.

Movant by counsel St.-Pierre further represents that "[T]he filing of this instant Appeal is a continued attempt to propound meritless litigation upon DLJ."    Yet, that claim is disproved by noting that "DLJ," whatever its merits, does not even stand before the Tribunal. There is no Proof of Claim for the Debtor to litigate against, by Objection to Claim or otherwise.  Simply put, DLJ does not exist before this Court  (other than by its Motion).

Movant represents that "[A] foreclosure judgment against the debtor first entered back on June 10, 2002."  Responsively, the Debtor notes that that "Judgment" attempt did not incorporate "DLJ."  More cogently, the "Judgment" **did not enter**, as the Court was satisfied that counsel Richard Leibert of the law firm of Hunt, Leibert had perpetrated a fraud upon the trial court.  The

specifics are that Leibert, as counsel for yet another non-existent entity, "Bankers Trust of

California," had mailed his various Pleadings to a non-existent address some two villages over –

and even had brazenly certified the false address to the Court!  When the Postmaster came before

the Court and attested that the address used by Richard Leibert was not in Ivoryton, and further

did not even exist, the Motion for Judgment was Denied.

There is no "2002 foreclosure judgment."  Counsel St.-Pierre, employed by Hunt-Leibert,

knows this perfectly well – yet nonetheless is brazen enough to advance this as "fact" to this

Court.

Additionally, there is not even any "State Court Judgment." What "DLJ" has done is

make a claim against a Property by asserting against a non-owner. In effect, "DLJ" files court

claims against tenants asserting the tenant as owner, then without the actual owner ever even

knowing about it, proceeds to record a "judgment" which it drafts itself, claiming itself to be a

judgment creditor, upon the land records – which it did, ironically, while the true owner was also

in bankruptcy, and without stay-relief.  This is a charade, and fails as it is not in conformance

with the Uniform Court Standing Orders for Foreclosure, additional to being violative of the

automatic-stay Statutes,  and thus utterly void. Nothing "DLJ" does is enforceable.[3]

The Court's attention is also directed towards the nature of "DLJ's" request for relief, as

contained in its "proposed Order."  The proposed Order [Doc. 12-1, found at Movant's Exhibit

"A"]  would (1) bar the debtor from filing any petitions under title 11 for two years; (2) enjoin

the debtor from transferring any interest in the Property for two years; (3) have the Order binding

---

[3]  As counsel for Movant makes considerable reference to a "two year bar," Debtor notes that this had nothing to do with "DLJ" or even this property.  The matter revolved on the Debtor's failure to maintain liability insurance with the estate as named insured on another property in another County. Movant would love to deceive this Court into concluding that this was resultant of litigation with "DLJ," however at that point in time "DLJ" had not even surfaced on the Subject Property, which was in litigation, but with yet another entity. "DLJ" was not before the State trial Court at that point, and the suggestion that "DLJ" was the actor in the bar order is a falsity of St.-Pierre.

on the "record owners of the property" for two years; (4) have the Order binding on any title 11 filing by *anybody* who is either an owner or an occupant of the property "until possession of the property is complete." Thus, Movant would have this Court simply ignore the statutory and substantive due-process and equal-protection rights of the "owners and occupants" of the property, forever, with those persons *not even being Noticed, much less even being before the Court.* Movant would have this Court extend its reach onto persons and entities that do not even know about Movant or this Petition, and snuff their rights of equal protections under the laws.

At the time that Movant by counsel proffered its Proposed Order, it knew full well that the Court could not alienate the equal-protection and due-process rights of persons and entities not before it. Nonetheless, in an effort to obstruct the real owners of the Property, Movant attempted this end-run, which speaks to the standards of counsel for Movant.

## VI.    THE NATURE OF "DLJ."

As the history of "DLJ" and "Select Portfolio" is confusing, the Debtor offers a short tutorial. "Select Portfolio Servicing, Inc," the entity that has actually retained Hunt-Leibert and is the entity engaging in this litigation, is the reincarnation of a Washington State outfit, *Fairbanks Capital Corp.*,[4] which was engaged in sub-prime mortgage brokerage. Fairbanks was sued by the State of Washington for a long list of egregious mortgage-lending offenses, and was fined some $50,000,000. HUD sued Fairbanks Capital for engaging in unfair, deceptive and illegal mortgage-servicing practices. Fairbanks then folded its tent and left the State, without paying the Judgments. Fairbanks re-invented itself in Utah, the terrain of its holding company, as "Select Portfolio Services Inc.," where it continues in the exact same vein as described and sued upon by HUD. "Select" has a long and notorious history of falsified Filings of Mortgage

---

[4]   Fairbanks Capital Corp was in turn owned by Fairbanks Holding Co., a Utah corporation. Fairbanks Holding also dropped off the radar and re-invented itself as "SPS Holding Corp."

transfers, done under the names of "Bill Koch," "Barbara Neale," and "Monica Nielsen," all described in those fraudulent documents as a "Document Control Officer." These are the classic "robo-signers" of the sub-prime mortgage fraud scandal.

In 2005, Credit Suisse AG, the Swiss bank, made a business decision to enter the sub-prime mortgage securitization racket, and purchased "Select" through its Credit Suisse First Boston subsidiary bank in New York, located at 11 Madison Avenue in Manhattan. Credit Suisse also purchased the sub-prime investment-banking house "Donaldson Lufkin Jenrette," folding that operation into Credit Suisse. As a condition of employment, five managers at Donaldson, all living in Garden City, Long Island (and who all commute in on the train together), demanded as a condition of coming over to Credit Suisse that the Bank allow them to operate their own front from within Credit Suisse offices. That operation became known as "DLJ," from the initials for Donaldson, Lufkin and Jenrette.

"DLJ" remains totally opaque. Although nominally registered in Delaware, that address is to an "agent for service" outfit. "DLJ" has no actual address or office of its own. It exists only on paper of the original concocters, and is a classic sham corporation. Inquiry with the Tax Office of the City of New York shows no listing of property tax for tangible items; "DLJ" owns no desk, or chair, or lamp, or filing cabinet, not even a telephone. It has no nameplate on the doors of the Bank, and as a practical matter is invisible.

"DLJ" is a "paper harvester." It collects stale paper through a process known as a "basket," wherein a certain number of mortgage papers that are deemed "scratch and dent" but otherwise collectible are bought at a discount, a classic arbitrage. The rest of the "basket" is deemed with broken chains of title and uncollectible, at least by conventional means, and for that, "DLJ" pays nothing. As the Debtor's old mortgage has multiple broken points in its chain

of title, "DLJ" paid nothing for the paper,  and stands before this court with no real money

aggrievement. "DLJ" avoids making a Proof of Claim as it knows full well that such proof would

be attacked for want of payment through a true sale, and there is none.  The other problem is that

"DLJ" is not a proper creditor, in that its claims flow from yet another sham entity that in turn

had no purchase and payment for any note of the debtor; further, the entire note was long ago

paid off by Radian Insurance, a player in the credit-default insurance policies market that so

spectacularly disintegrated in 2008.  The note, to the extent it can be deemed a note, was thus

fully discharged, the creditors on that Note having long ago been paid – but the note itself never

stamped as "Paid."  To the extent that "DLJ" could ever perfect its claim on the note – and it

cannot – it would be barred from further collection on grounds of discharge by payment, and

unjust enrichment defenses.

## VII.   CONCLUSION

Movant has no Standing to advance any cause before this Court. Movant is not listed on

Schedule D of the Debtor's Petition as a secured creditor. Movant is not recorded by the Debtor

as a lien holder against the debtor's realty.  For Movant to have the ability to set the bankruptcy

court's judicial machinery in motion, it first would have to properly Appear before the Court by

filing a *Proof of Claim*.  Movant refuses to do so, as it knows full well that any *Proof* would be

challenged and dismissed.

Absent Standing, nothing the Movant would represent in this Appeal can be

countenanced.  The entirely of the *Motion to Dismiss* has to be disregarded.

Movant's various representations to the Court, notwithstanding the shrill assertions of

counsel St.-Pierre and the vast poundage of paper with which she has bombarded this Court, are

not truthful.  The callous absence of candor towards the Court in advancing arguments including

that "Movant DLJ is a secured creditor of debtor" end up consuming the Courts' valuable and scarce judicial resources and are properly the subject of the court's own sanctions. Movant represents that the debtor had a "foreclosure judgment" entered against him in 2002; that was egregiously untruthful, as counsel knew that the attempt was steeped in fraud and instantly Denied by the trial courts. The claim that the Debtor had "filed ten bankruptcies" was outrageously untruthful. The claim that debtor was engaged in a "13-year" series of "frivolous actions that severely prejudiced DLJ" was outrageous, given that "DLJ," whatever its merits, was not even on the scene in any of those matters.

Indeed, even the Bankruptcy Court itself has become uneasy with the representations of Linda St.-Pierre, and attempted to reverse its own Orders, albeit unfortunately without subject-matter Jurisdiction to do so. Nonetheless, the Bankruptcy Court's own lack of confidence in the assertions of "DLJ," and the misconduct of its counsel Hunt-Leibert in crassly not sending Notice of its Motion and hearing as specifically required by the Court, acts as an indicator of the lack of candor of counsel for Movant towards the Tribunal. The Hunt-Leibert foreclosure mill law firm appears daily before the Court, and the Court has come to depend upon the veracity of the representations made by counsel to the Tribunal. Notwithstanding the long history of presenting themselves to the Court, and the duties and obligations of counsel before the Court, the officers of the Hunt-Leibert law firm are and remain untruthful to the Court, in full knowledge that their acts are deceptive and misleading. These acts of moral turpitude call for the Court to levy Sanctions.

At this juncture, Movant "DLJ," the paper sham corporation, and its counsel Hunt-Leibert, have inundated the Court with vast mounds of paper, obliging the Debtor to spend inordinate time and effort to sort through the morass and present a cogent response. Movant and

its counsel have also engaged two Courts, the Bankruptcy Court and this District Court sitting in

Appeal, with Motion practice to which their client has not properly Appeared, has no aggrievable

claim,  and of which no act or failure to act of this debtor will redress, as there is nothing to

redress.  "DLJ" has no proof of purchase and sale of any Obligation of the debtor, and has spent

not one thin dime purchasing any enforceable obligation of the Debtor.  "DLJ" is owed no

monies.  "DLJ" has no claim to property.  "DLJ" refuses to file a Proof of Claim. "DLJ" has

baselessly engaged the court's judicial machinery, in an effort to wrongfully divert the Court's

protections of the debtor and his statutory claim to the bankruptcy court to sort out his affairs.

WHEREFORE, the Motion to Dismiss Appeal should be dismissed, and counsel for

Movant sanctioned by the Court.


RESPECTFULLY SUBMITTED this 4th day of August, 2015.

BY THE APPELLANT,

HERMANN VANECK
24 Ebony Lane
Ivoryton, CT 06442

CERTIFICATE OF SERVICE

Service is hereby certified by deposit of a true copy of same, first-class postage prepaid, into the United States Mails, or by hand delivery, or by electronic filing via the Court's ECF system,  on August 7, 2015, addressed to:

Clerk of the United States District Court
915 Lafayette Blvd.
Bridgeport, CT 06604

U.S. Trustee
Office of the U.S. Trustee
150 Court Street #302
New Haven, CT 06510-7016

Kara S. Rescia, Esq.
Chapter 7 Trustee
Rescia and Katz
5104a Bigelow Commons
Enfield, CT 06082

Hunt, Leibert Jacobson
50 Weston Street
Hartford, CT 06120

HERMANN VANECK