UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

In re:

2016 JAN 13  P 3: 52

HERMANN VANECK,
Debtor

Case No: 3:15-cv-00343-SRU
BRIDGEPORT CT

January 13, 2016

### DEBTOR'S OBJECTION TO
### MOTION TO DISMISS APPEAL
### FILED BY "DLJ MORTGAGE CAPITAL INC."

The Debtor in the above-referenced Appeal of a bankruptcy matter hereby files his Objection to a Pleading titled *"Motion to Dismiss Appeal,"* [hereinafter: "Motion"] submitted to this Court by Linda St.Pierre on behalf of "DLJ Mortgage Capital, Inc," a paper sham entity ["DLJ"]. The Pleading is not even properly before the Court.

**I.      THE CERTIFICATION IS A FRAUD ON THE COURT.**

**(a)      The envelope reflects a date three days later.**

As a threshold matter, the Court's attention is directed to the "Certification Page" signed by Linda St.Pierre, counsel for "DLJ."  In the Certification, St.Pierre certifies to this Court that "…on the **18th** day of September, 2015 copies of the foregoing were mailed via U.S. Mail, postage prepaid, to [the debtor]….."   [Signed: Movant].

Debtor now introduces his **Exhibit "1"**, a copy of the actual envelope that was used to ultimately transmit the *Motion* to the Debtor.  The Court will observe that the actual date imprinted by the internal postage meter of the law firm *Hunt, Leibert, Jacobson, P.C.* is  09/**21**/2015.

The imprint is generated by a *Hasler* machine, a German postage-meter manufacturer. The imprint, placed on a tape, only reflects the date that the postage tape

1

customary practice of the post office in such cases would be to imprint a bar-code upon the envelope so as to render it machine-readable.   And there is no bar code.

The conclusion points to yet a further perfidy and fraud upon this Court: that the envelope, notwithstanding the representations by and over the signature of St.Pierre, actually was never deposited in the mails, and instead was dropped off some weeks later by a staffer of Hunt-Leibert on her way back from the New London court house or the New Haven bankruptcy court, thereupon stuffed into the debtor's mailbox curbside.[1]

It is a peculiar insolence that, if countenanced, grossly undermines the operations of the courts and materially disadvantages the Debtor.  The proper remedy is for the Court to refuse to consider the Pleading and to strike the Pleading from the Docket Record.

## II.   THE "MOTION" IS WITHOUT MERIT AND INSUPPORTABLE BY THE FACTS.

Without waiving any of the above Objections to this matter even coming before this Court, The Debtor further represents that *nothing* that the Movant [St.Pierre] represents is factually truthful.  Indeed, it would be that St.Pierre is writing about some other case, or alternatively has crafted a construct to suit herself.  In either event, St.Pierre is not fulfilling her obligations to be full, frank and candid with the Court.

### A.   The suggestion that the Debtor lacks Standing to be a Party to his own bankruptcy petition matters is preposterous.

As a threshold matter, the Pleading being advanced herein by St.Pierre differs materially from those suggested to the United States Bankruptcy Court ["USBkCt"].

---

[1] The debtor lives in a rural area with street mailboxes. This house is referred to herein as "the Property."

3

Within the instant Motion, St.Pierre sets forth the first prong of her argument, that "[T]he Property is not property of the bankruptcy estate as title to the Property vested long ago into DLJ." Yet, this is at variance with Movant's other representations that the Property is an asset of the bankruptcy estate, with "DLJ" as a secured creditor. See:  Movant's Exhibit "**A**": *Motion for In-Rem Relief from the automatic stay pursuant to 11 USC 362(d)(4)*.  The Court may be mindful that therein, before the USBkCt, St.Pierre set forth the proposition that "DLJ" was a "secured creditor."

Indeed, St.Pierre commences that stay-relief *Motion* with the statement:  "The undersigned Movant, DLJ Mortgage Capital, Inc., <u>a secured creditor</u> of the above-named Debtor, …"

The problem with these two representations is that they are inherently mutually contradictory. If the "title vested long ago (into DLJ)," then perforce "DLJ" cannot possibly be a "secured creditor."  And conversely, if "DLJ" is a secured creditor, as it alleges, then no title to the Property could possibly have "vested."

No explanation has been forthcoming as to these contradictions.


**B.     It is "movant" that has no Standing; no Proof of Claim is before the Court.**

Although St.Pierre seeks to importune this Court (and the USBkCt) with the suggestion that "DLJ has Standing," in fact there are no indicia anywhere within the picture and context of this Petition to support the proposition that "DLJ" is either a creditor or a party in interest within the bankruptcy petition or estate.

A perusal of the Petition documents does not reveal any interest of "DLJ." Simply put, "DLJ" is a stranger to the bankruptcy matter.

4

Further, "DLJ" itself has carefully avoided filing a <u>Proof of Claim</u>. No representation has been made anywhere that "DLJ" holds a secured creditorship position – except in the stay-relief *Motion*. And that is insufficient as a matter of law for "DLJ" to advance the proposition that, as a secured creditor, it has Standing to apply for stay-relief.

Just exactly how does "DLJ" show up before the Court – and how is "DLJ" to be viewed by the Court? That seems to be the equivalent of the blind men touching the elephant – it becomes a function of where "DLJ" would like to position itself, and varies from day to day. In the *Motion* before the USBkCt, "DLJ" postures itself as a "secured creditor." In the *Motion to Dismiss* before this District Court, "DLJ" represents that the Debtor has no interest in the Property. Perforce, these are contradictory postures.

Movant can maintain no claim nor ask for relief before this Court where the representations before this Court are diametrically reversed from the underlying representations made to the USBkCt. Movant has deliberately practiced a deception upon the Court, as its first-instance Motion practice before the District Court; accordingly, the Court shall not recognize his right, nor afford him any remedy. <u>Keystone Driller Co. v. General Excavator Co.</u>, 290 U.S. 240, 245.

**C.   Movant's assertions are so outrageous as to constitute a fraud upon the Court.**

    **(a)   The outrageous claim of "ten bankruptcy petitions severely prejudicing DLJ."**

Perhaps the single most egregious misrepresentation is the utterly untruthful assertion (propagated by Linda St.Pierre) that the Debtor has "filed ten bankruptcy

petitions" and that it is all a "continued attempt to propound meritless litigation upon DLJ." [Movant also asserts that "The Debtor has to date engaged in a 13 year attack upon DLJ…with meritless state court litigation which has severely prejudiced DLJ." *See*: *Motion* herein, p.2.] What makes this utterly outrageous is that (**1**) there are no "10 bankruptcy filings,," that being a fantasy of Linda St.Pierre; and (**2**) "DLJ" does not even show up by their own accounting until 2010, when all of the other matters with other people were long closed out.

As this strident assertion is so outrageous and so untruthful, it shall now be described further in some detail. The Court's attention is directed towards the representations made by Movant [St.Pierre] in its stay-relief *Motion* dated January 12, 2015. At para. **7**, Movant recites what it considers to be the relevant litigation history. That this is absurd, utterly farcical is easily seen:

1. Movant commences by reciting a 1989 bankruptcy petition. Yet, the subject property *was not even built* until 1994 – five year later. The Debtor did not purchase that Property until 2001 – *twelve years later*. "DLJ" does not surface until 2010 – *twenty-one years later!* Nonetheless, this is treated as "meritless litigation upon DLJ."

2. Movant claims two cases in April 1992. Yet, inspection of the docket shows that the matter related to a certain employer of Debtor's wife who had absconded with funds, bringing a purported creditor to the door of the wife. Debtor filed together with his wife so as to avoid possible subsequent claims of shielding assets from a creditor (an on-going risk faced by married couples). Actually, there is only one case; the Court split the cases, separating husband and wife. Again, all of this was long before that House was even built! And it was also two decades before "DLJ" surfaced.

3. St.Pierre then attempts to recite some filings that were procedurally dismissed as being "the propoundment of meritless litigation upon DLJ." Again, these matters long predate the debtor's purchase of the subject Property. There can be no possible connection, no matter the fantasy, that "DLJ" is "severely prejudiced" by anything that took place before the Debtor even purchased the Property.

4. "DLJ" by St.Pierre finally references a docket filed in 2008 – at which time the Debtor owned the subject Property. However, the entity that filed a *Proof of Claim* was not "DLJ," but the entity "GRP Loan, Inc.," again a paper sham corporation crafted by "GRP Financial Services Corp.," a mouse-house operating behind an anonymous locked door on the fifth floor of a nondescript office building in White Plains, NY. It was engaged in all manner of chicanery, and when the cops came calling, the operators took a powder.

5. In 2010, the Debtor sold the Property. A scrutiny of the state court docket record shows that "DLJ" showed up in that docket afterwards, and filed pleadings to insert itself into that Docket as a purported "purchaser" of the interests of "GRP." However, not one indicium of an actual purchase was ever produced. Notably, St.Pierre did not notify the owner of the Property that she was Opening a closed docket, to insert "DLJ." In effect, the touted "Judgment" of DLJ is one obtained by fraud – a claim akin to a person living down the block and around the corner filing a claim that he owns a mortgage on a house, notwithstanding being a stranger to the house and not having paid one thin dime for any note – then obtaining a "judgment" based on non-service to the homeowner.

**(b)     "DLJ's" fraud vitiates everything.**

It is well-settled law that fraud vitiates everything, including the most solemn of contracts, and even judgments. The case law supporting this proposition is numerous; here are some well-known cases:

> Supreme Court and U.S. Supreme Court levels:
>
> - *Nudd v. Burrows*, 91 US 426 (1875), "Fraud destroys the validity of everything into which it enters."
> - *Boyce's Executors v. Grundy*, 3 Pet. (28 US) 210 (1830), "Fraud vitiates everything."
> - *United States v. Throckmorton*, 98 US 61, 70 (1878) "Fraud vitiates the most solemn contracts, documents and even judgments."
> - *Ellett v Ellett*, Virginia 0824-00-2 (March 13, 2001)14 where a property settlement is overturned and specifically cites Throckmorton.
> - *Dakota Partners v. Glopak, Inc*, 2001 ND 168 North Dakota Supreme Court.
> - *In Re Jose Alejandro Penafiel, Relator*, No. 05-021316 Texas Supreme Court (2001) "Texas law holds that fraud vitiates every transaction tainted by the fraud."

The Court may be mindful that "DLJ" seeks to found its assertions before this Court with two disparate and contradicting representations: that it is a secured creditor (thus, having a secured lien upon the Debtor's Property); or that it is the owner of property to which the debtor has no right.  By making these disparate claims, Movant is not fulfilling its solemn duties and obligations to the Court: to be frank and candid with the Court, where nothing is to be held back, and full disclosure is to be made, so that the Tribunal can make a proper decision.  Where Movant artfully attempts to cast a pervasive veil of innocent opacity over the matter, it is not being frank and candid with the Court, and the Court shall hold Movant remediless. *Keystone Driller*, at 245, *supra*.

8

    **(c)   Movant's representation that "a Foreclosure Judgment against the debtor first entered back on June 10, 2002" is outrageous, and a fraud upon this Court.**

Movant DLJ by counsel Linda St.Pierre makes the strident representation to this Court that "A foreclosure judgment against the Debtor first entered back on June 10, 2002." That is utterly outrageous. The Debtor demands that Linda St.Pierre provide evidence to support that claim being made to this Court.

By having advanced such an utterly outrageous representation, made as a statement of fact and not an argument to this Court, Movant cannot be heard to advance any claim whatsoever before this Court. At this point, the Court should require of Linda St.Pierre to produce for the Court's inspection a copy of the claimed "Judgement" of June 10, 2002.

It never happened.

As a total, outrageous fraud upon this Court, St.Pierre should be barred from practice before the Court.


    **(d)   The claim that "upon expiration of that bar [2008 Petition], the Debtor then filed the instant bankruptcy in his continued attempt to thwart and delay DLJ's action" is egregiously untruthful, and a failure of Movant to be frank and candid with the Court.**

Movant by St.Pierre seeks to importune this Court with the construct that there was an immediacy in the filing of the instant Petition with that of 2008 – and which was long before "DLJ," whatever their most murky claims, was ever heard of. The 2008 docket was closed in 2010 due to the Court's determination that there was no insurance carried on a Branford, Connecticut property. The failure to carry insurance, in the

9

Court's view, exposed the Estate to possible liability claims, and thus a bar was entered. That bar expired in 2012.

The instant Petition did not commence until 2015.

The suggestion that the matters are inter-related with "DLJ" is preposterous. Rather, the instant Petition revolves on attempts by a third party to convert assets with a value of approximately $980,000 to their own enrichment. Movant seeks to suggest to this Court that there are these series of Filings done with the effort to "thwart DLJ." Yet, inspection reveals that assertion is meritless. Getting past the threshold test that "DLJ" has and had no claim as against the Debtor in the first place, the Debotor points out that several years passed in-between. Had "DLJ" a meritorious case, it would have been able to advance its cause before the appropriate tribunal. That "DLJ" did not, or in the alternative was unable to, undermines its claims here that it is the Debtor that "thwarts" Movant.

In reality, it now appears that "DLJ" advanced litigation, purportedly against the Property, by studiously avoiding filing suit against the owner/purchaser of the Property. Rather, "DLJ" filed against the Debtor – after the Debtor had sold the property. By failing to b ring in the owner, DLJ's litigation claims took on the flavor of an unsecured action. "DLJ" cannot be heard here to advance a claim that it can support an *in rem* action against the Property, when all it has ever done was commence litigation against the Debtor long after he had sold the Property. Indeed, it is doubtful that the Owner of the Property even knows what "DLJ" has been up to. Assuredly, "DLJ" never told him.

### III. MOVANT'S LEGAL THEORIES ARE INAPPOSITE AND MERITLESS.

In the vast mounds of paper with which Movant has chosen to inundate this Court, there is no support for the contentions that case-law favors the latest (albeit shifting) posture of "DLJ." Foremost, there is no scintilla of evidence that "DLJ" ever paid one thin dime for any Obligation of the Debtor, or of anyone else associated with the Property, either now or formerly. Indeed, "DLJ" is and remains a complete stranger to the Property and the debtor's note – which was with Express Capital Lending.

Debtor does not recite at length the inapposite nature of Movant's case-law claims; they are covered in Debtor's Opposition _Brief_ dated August 4, 2015, and already in this Docket File. Tellingly, Movant has carefully avoided making any representation that it is a creditor: Movant has avoided filing a _Proof of Claim_. Indeed, the last _Proof_ as relates to this property was filed by "GRP Loan, Inc." which also attempted a stay-relief Motion.[2] That Motion was Denied. Previously, the entity "Bankers Trust" attempted an analogous summary-judgment Motion, accompanied by four Affidavits and hundreds of pages of documents. That Motion was also Denied. Neither Bankers Trust, nor Wells Fargo, nor GRP Loan Inc., nor DLJ Mortgage Capital, could od did ever produce any evidentiary foundation that any actual funds were paid for acquisition of any Obligation of this Debtor.

These entities, and Express Capital, and Wendover Financial, are all chimeras on the horizon, who seem to pop up in unexplained fashion, to make bald assertions of "rights" before the Tribunal, yet utterly unable to explain why they (or anyone else in

---

[2] The pleading papers were advanced by Linda St.Pierre of Hunt-Leibert, which perhaps explains the uncanny parallel to the instant Motion in construct. Debtor notes that the "GRP" motion was Denied, as were all such previous Motions.

their right mind) would actually pay good money for an uncollectible debt obligation made to another, and unable to demonstrate any purchase and sale of any such debt obligation or even some derivative rights thereto.

Debtor archly notes that, as to the underlying mortgage, there was both private mortgage insurance and a third-party insurance suretyship on the loan, which insurances paid off the principal and interest on the loan years ago. The insurers interestingly do not stand before the Court, and have made no claim onto the Debtor herein, either now or previously.

The reality is that unscrupulous players in New York are attempting to convert realty, for which they paid nothing, to themselves, to inure to their own enrichment. That effort is buttressed by carefully fashioned documents that do not, and have not, withstood scrutiny.

Movant's bald assertion that the creation of the debtor's Estate precludes him from asserting any defense to DLJ's latest claims is meritless. As Debtor has demonstrated in his *Brief* of August 4, 2015, the Debtor has on-going and continuing duties and responsibilities to defend the assets of the Estate independent of the Trustee. Further, the Trustee has abandoned all assets back to the Debtor and has no further interest in any of it. It is the Debtor who has the responsibility, both to himself, his creditors, and the Estate, to defend the assets of the estate however comprised from poaching by "DLJ."

In *Channer*,[3] the subject real estate was owned by the Debtor and there was a mortgage that continued upon the Property. Those facts are distinguished in the instant

---

[3] Channer v. Loan Care Service Center, Inc, 2011 WL 238878 (D. Conn.), as cited by Movant.

12

Docket, were the Property belongs to another, and the Debtor merely is living in the residence. The Property is not part of the bankruptcy estate (absent some possible defect in sale, which would vacate the sale). More telling, it is "DLJ" itself that, albeit first claiming to be a "secured creditor," flatly refuses to file a *Proof of Claim* – and thus absents itself from the scrutiny of this Court. It is "DLJ's" own actions that undermine its claims and its credibility.

Again, *In re Turner*[4] is not on point as it relates to a Petition in which the Debtor owned the Property and objected to a "mortgage holder" advancing a claim. Herein, the docket is distinguished as there is no mortgage holder, the Debtor does not own the property, and there is no claim being advanced within the bankruptcy docket. While Movant entertains the Court with a long dissertation about the "trustee's avoidance posers," that has zero to do with the facts of the instant case. Herein, there is no Trustee nor anyone else that is using "avoidance powers" – for the elemental reason that no creditor, specifically "DLJ," has made a Proof of Claim onto an asset of the Debtor's Estate, so there is nothing to Avoid.

Finally, in this vein Movant represents to the Court that "the Appeal by the Debtor would potentially create a windfall [for the Debtor]; yet, that representation is without foundation. The Debtor does not even own the Property. Another party, not before this Court, owns the house. The Debtor merely lives there. The rental arrangement is not before this tribunal. "DLJ" never sued, much less took a Judgment from or upon, the actual Owner of the property. To the extent that "DLJ" sues the debtor, that claim is disposed of by Discharge in Bankruptcy. "DLJ" does not pursue the real owner because

---

[4] 490 B.R. 1 (Bankr. D.D.C.2013), cited by Movant

DLJ has no ability to do so: it never paid anything for any claim, no matter how construed, for any rights to the Property.

When all is said and done, what the Court is left with is mounds of paper wrongfully placed before the Court by Movant in a scheme to place a veil of innocent opacity as to its activities before the Court, and to advance claims to which it is and remains a complete stranger. DLJ cannot demonstrate that:

- It paid anything for any mortgage, note, or other instrument;
- It has an actual, as contrasted with a fabricated, interest in anything;
- Any rationale why it would pay money for a long-defaulted debt of someone who is bankrupt;
- Any claimed predecessor in interest actually had any real claim;
- Any predecessor in interest actually paid money for any claim to the Property;
- It has an enforceable chain of title to the Property or any Note of Debtor.[5]

The raw truth is that DLJ Mortgage Capital Inc. is a sham entity, a paper corporation being used as a veil to advance a Wall Street con game. In that effort, it makes spurious claims upon Properties wherein the surety of the Note has long since paid off the claim. It simply manufactures "paper" by the utilization of its alter-ego, Select Portfolio Services Inc, an entity in Utah which was expelled from Washington State for engaging in mortgage fraud. It seeks to further advance the baton of "GRP Loan Inc." which itself failed to have any of its various proposals to the Court sustained. As such, the entire Motion is an artifice and should be Denied.

---

[5] DLJ itself in its internal memoranda admits that there are breaks in the chain of title.

WHEREFORE, the Debtor enters his Objection to the *Motion to Dismiss Appeal* being advanced by the paper entity "DLJ Mortgage Capital, Inc., and asks the Court to sustain his Objection.

RESPECTFULLY SUBMITTED this 13th day of January, 2016.

BY THE APPELLANT,

*[signature]*

HERMANN VANECK
24 Ebony Lane
Ivoryton, CT 06442

## CERTIFICATE OF SERVICE

Service is hereby certified by deposit of a true copy of same, first-class postage prepaid, into the United States Mails, or by hand delivery, or by electronic filing via the Court's ECF system, on January 13, 2016, addressed to:

Clerk of the United States District Court
915 Lafayette Blvd.
Bridgeport, CT 06604

U.S. Trustee
Office of the U.S. Trustee
150 Court Street #302
New Haven, CT 06510-7016

Kara S. Rescia, Esq.
Chapter 7 Trustee
Rescia and Katz
5104a Bigelow Commons
Enfield, CT 06082

Hunt, Leibert Jacobson
50 Weston Street
Hartford, CT 06120

_____
HERMANN VANECK

16

# EXHIBIT "1"

Mailing Envelope of Hunt, Leibert

Dated September 21, 2015

Hasler
09/21/2015
US POSTAGE

PRIORITY MAIL
$05.95⁰



ZIP 06120
011D11641912

From:
Hunt Leibert Jacobson, P.C.
ATTORNEYS AT LAW
50 Weston Street
Hartford, Connecticut

TO:
Hermann Jan Vaneck
24 Ebony Lane
Ivoryton, CT 06442